718 P.2d 1216

**Alonzo v. CAPPS and Nona Lee Capps, husband and wife, Plaintiffs-Appellants,**

**v.**

**Robert D. WOOD and William J. Smith, duly appointed and acting personal representatives of the estate of Thomas B. Burton, deceased; and Frank Davison, attorney of record of the estate of Thomas B. Burton, deceased; and Frank C. Shirts, Jr., a single man; and Robert A. Shirts, a single man, Defendants-Respondents.**

No. 15910.

Supreme Court of Idaho.

April 28, 1986.

Michael B. Sweet, Weiser, for plaintiffs-appellants.

Ira T. Burton, of Burton & Kroll, Weiser, for defendants-respondents.

BAKES, Justice.

Plaintiffs sought to quiet title in their name to a parcel of land in Washington County, Idaho. When, after trial, the district court entered judgment in favor of defendants, plaintiffs appealed. We now reverse.

The ownership of an 11.4 acre parcel lying southeast of the Weiser River in Section 2, Township 14N, Range 3 W.B.M., in Washington County, Idaho, is in dispute in this case. In order to understand how the dispute arose, it is necessary to retrace the chain of title of the disputed parcel.

In January of 1944, Eva Barber conveyed a parcel of land to Thomas and Tennie Burton. The parcel was located south of the Weiser River and, according to the legal description, ran "to the intersection of the center line of the Weiser River." Subsequently, in October of 1944, Eva Barber conveyed a second parcel of land to Roy Smith. The legal description of this parcel particularly excepted the "tract of land deeded to Thomas and Tennie Burton."

In 1956, Smith deeded his property to the Bishops. The legal description in this warranty deed made no reference to the Burtons' parcel. Rather, the warranty deed used the center line of the Weiser River as a starting point and conveyed the property situated "northwesterly of the Weiser River."

While the property was in the Bishops' possession, the course of the Weiser River was changed. According to Ray Blakely, a former employee of Burton's, Mr. Bishop and Mr. Burton agreed in 1958 to change the course of the river. Although the river's course changed, the legal descriptions contained in the deeds were not changed. Thus, after the river's course changed, approximately 11 acres of Bishop's land was located south of the Weiser River, although Bishop's deed reflected that Bishop only owned property north of the Weiser River.

At some point, soon after the river's course changed, a meandering fence was built at Burton's direction along the old river bank, and Burton began to use the part of the Bishops' parcel which was southeast of the Weiser River as a feedlot. Burton continued to use the property until 1975.

In 1968, Bishop sold his land to the Hoppers. Although some of Bishop's land was now south of the river, the legal description contained in the original warranty deed which the Bishops received was written into the Hoppers' warranty deed verbatim. In 1968 Hopper transferred the property to the Baults, using the same legal description, and in 1968, the Baults trans-

ferred the property to Alonzo and Nona Lee Capps, plaintiffs herein, using the original legal description. Later, in March of 1970, the Capps transferred their interest in the property to Burl Scott, using the original legal description. However, the record reflects that in January of 1971 the Capps received a quitclaim deed from Burl Scott giving them back the land located southeast of the river. In 1975, Capps placed a sign on the fence gate identifying the parcel as his property and padlocked the gate.

The controversy as to ownership of the parcel surfaced after Burton's death in 1976. After Burton's death, the personal representative of Burton's estate contacted Capps regarding the parcel. Despite subsequent correspondence as to the ownership of the parcel, 30 acres of Burton's property, including the disputed parcel, was sold by the estate on October 16, 1976. Capps appeared at the sale to request that he be allowed to state that he had a claim against the parcel. Although Capps was denied permission to make the statement, an announcement was made acknowledging that the buyer of the entire parcel would be reimbursed on a pro rata basis if a survey revealed that Burton owned less than thirty acres. Capps bid on the property, but the property was sold to Frank and Robert Shirts.

Ultimately, Frank and Robert Shirts received a deed from the Burton estate containing a legal description which used the center of the Weiser river as a reference point. Thus, the deed purported to give the Shirtses title to the disputed parcel.

When Capps discovered that the Shirtses had removed his lock and sign from the fence gate, further discussion as to the ownership of the parcel ensued. The sign and lock were again placed on the fence and, again, were removed. Finally, on July 6, 1978, Capps filed a complaint, seeking to quiet title to the property.

Trial began on April 9, 1980. At trial, plaintiffs attempted to show that $100 annual rental payments had been received from Burton for the feedlot parcel prior to 1975,[1] that Burton had notified Capps as to his intent to cease using the property, and that it was commonly understood that Capps owned the parcel which Burton was using for a feedlot. Burton's $100 check, dated December 31, 1974, written to Capps, was admitted into evidence as Plaintiff's Exhibit 12. A notation on the check, in Burton's handwriting, stated, "Rental on feed yard for 1974." As the evidence was presented, it became clear that the disputed parcel had been subjected to double taxation since 1972.

During trial, Capps attempted to testify that Burton, at one time, had offered to purchase the now disputed property. The court refused this testimony, ruling that I.C. § 9–202(3), the dead man's statute, barred the testimony. The court also ruled that I.C. § 9–203A, the accountant's privilege statute, precluded Burton's former bookkeeper from testifying that a bookkeeping entry indicated that in 1973 Burton made a rental payment of $100 to Capps.

After considering the evidence, the district court issued its findings of fact and conclusions of law, entering judgment in favor of the defendants.

Subsequently, two new witnesses were discovered. These witnesses signed affidavits stating that Burton had told them that the feedlot belonged to Capps. These affidavits were submitted to the court by plaintiff's counsel as part of a motion for a new trial. The district court, on October 8, 1980, concluded that the evidence should be reopened for the limited purpose of taking the testimony of the affiants.

Meanwhile, plaintiff's attorney filed an appeal to this Court. On January 13, 1982, the appeal was dismissed by order of this Court on the grounds that final judgment had not been reached in the district court.

1. I.C. § 5–211 provides that possession by a tenant is presumed to be possession by the landlord. Thus, by proving that he was Burton's landlord, Capps sought to prove possession of the disputed property for the five-year period required by statute.

Nothing happened thereafter until January 7, 1985, when the district court issued an order confirming its previous judgment. In this order the court stated that no action had been taken in the case since 1980, despite the 1980 order allowing for the presentation of additional evidence. Plaintiff appeals to this Court from the now final judgment.

■ On appeal, appellants argue that the district court erred in refusing to allow Capps' testimony that Burton had offered to purchase the disputed property. We disagree. I.C. § 9–202(3)[2] bars (1) certain persons from testifying (2) in specified actions (3) as to certain communications. If all three portions of I.C. § 9–202(3) are satisfied, the offered evidence must be refused. *In the Matter of the Estate of Keeven,* 110 Idaho 452, 460, 716 P.2d 1224, 1232 (1986); *Argyle v. Slemaker,* 99 Idaho 544, 547, 585 P.2d 954, 957 (1978). In this case, all three portions are satisfied. Capps, the person on whose behalf the action is being prosecuted, seeks, in an action against Burton's estate, to testify as to an agreement (specifically an offer to purchase) not in writing, occurring before Burton's death. *See In the Matter of the Estate of Keeven, supra.* Thus, it was proper to exclude Capps' testimony as to Burton's offer.

Appellants also contend that the district court erred in relying on I.C. § 9–203A[3] to exclude testimony from Burton's former bookkeeper. The bookkeeper sought to testify that in 1973 Burton made a $100 rental payment to Capps. (The $100 check could not be located at the time of trial, apparently having been returned by the bank to Burton at some earlier point.) We agree with appellants that the bookkeeper's testimony was improperly refused due to the trial court's overly broad reading of I.C. § 9–203A.

Under I.C. § 9–203A, *licensed public accountants* and *certified public accountants* are specifically forbidden to testify as to communications with clients, without the client's approval. However, on its face it is clear that the statute is not concerned with the testimony of an unlicensed *bookkeeper.*

■ This perhaps subtle distinction makes sense in light of a reading of the complete statute. In limiting the privilege to communications between a licensed public accountant or certified public account and the client, I.C. § 9–203A seeks to preserve the confidences expressed during a client's consultation with such professionals. That this was the intent of the legislature in enacting I.C. § 9–203A can be seen by examining the original title.

"AN ACT

"RELATING TO CONFIDENTIAL COMMUNICATIONS; ADDING A NEW SECTION 9–203A, IDAHO CODE, TO PROVIDE IMMUNITY FROM DISCLOSURE OF PRIVILEGED OR CONFIDENTIAL COMMUNICATIONS BY

2. **"9–202. Who may not testify.**—The following persons cannot be witnesses:

. . . .

"3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person."

3. **"9–203A. Confidential communications with accountants**—Any licensed public accountant, or certified public accountant, can not, without the consent of his client, be examined as a witness as to any communication made by the

client to him, or his advice given thereon in the course of professional employment. The word 'client' used herein shall be deemed to include a person, a corporation or an association. The word 'communication' as used herein shall be deemed to include but shall not be limited to, reports, financial statements, tax returns, or other documents relating to the client's personal and/or business financial status, whether or not said reports or documents were prepared by the client, the licensed public accountant or certified public accountant, or other person who prepared said documents at the direction of and under the supervision of said accountants."

LICENSED PUBLIC ACCOUNTANTS AND CERTIFIED PUBLIC ACCOUNTANTS CONCERNING ANY COMMUNICATION MADE BY THE CLIENT TO SUCH LICENSED PUBLIC ACCOUNTANT OR CERTIFIED PUBLIC ACCOUNTANT OR RELATING TO HIS ADVICE GIVEN THEREON IN THE COURSE OF HIS PROFESSIONAL EMPLOYMENT." 1978 Idaho Sess.Laws, ch. 262, p. 570.

To read the statute as preventing a bookkeeper's testimony as to a bookkeeping entry, entered in the ordinary course of business, particularly when the testimony only proves the existence of a presently unavailable check, is to extend the statute beyond what the legislature intended. Where the language of a statute is unambiguous, the clear expressed intent of the legislature must be given effect, and there is no occasion for construction of the statute. *Ottesen v. Bd. of Comm'rs of Madison County,* 107 Idaho 1099, 1100, 695 P.2d 1238, 1239 (1985); *Worley Highway Dist. v. Kootenai County,* 98 Idaho 925, 928, 576 P.2d 206, 209 (1978). The statute, as stated in the title of the act, is intended only to prevent the disclosure of confidential information imparted to an accountant, not to prevent all disclosure of an individual's financial affairs. Accordingly, the district court erred in refusing the bookkeeper's testimony.

■ This error was particularly significant because, having excluded Burton's bookkeeper's testimony as to the 1973 rental payment, the district court then found that Capps had not proven possession of the disputed property for the five-year period required by statute. Thus, although the balance of the evidence was not sufficient to show a full five-year possession, the bookkeeper's testimony as to the 1983 rental payment could have established the five-year possession. As the trial court stated in its findings:

"Plaintiffs did not have actual possession of the property themselves and any claim of possession through Mr. Burton as a tenant was not established by competent evidence sooner than January, 1974. Possession commencing on that date would not be consummated for the statutory period of five years prior to January, 1979. This action was filed on July 6, 1978. *The inference of possession through Mr. Burton as a tenant in 1973 comes only through the inadmissible testimony of Blanche Rice [the bookkeeper].* The first overt act of the plaintiffs themselves which at least amounted to claim of ownership was the sign posting and locking of the gate in 1975." (Emphasis added.)

Since, as previously noted, the bookkeeper's testimony should have been admitted, the trial court's findings must be reconsidered.

Accordingly, we reverse and remand this cause to the district court for reconsideration in light of the above.

Costs to appellant.

DONALDSON, C.J., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.