790 P.2d 395

**Alonzo V. CAPPS and Nona Lee Capps, husband and wife, Plaintiffs–Appellants,**

v.

**Robert D. WOOD and William J. Smith, duly appointed and acting personal representatives of Thomas B. Burton, deceased, and Frank C. Shirts, Jr., a single man, and Robert A. Shirts, a single man, Defendants–Respondents.**

No. 17257.

Court of Appeals of Idaho.

April 11, 1990.

Massingill & Felton, Weiser, for plaintiffs-appellants. R. Brad Massingill argued.

Davison, Copple, Copple & Copple, Boise, for defendants-respondents Wood and Smith. Terry C. Copple argued.

Burton & Kroll, Weiser, for defendants-respondents Shirts. Ira T. Burton argued.

WALTERS, Chief Judge.

This is an appeal by Alonzo and Nona Capps from a judgment entered on remand following a previous appeal to the Idaho Supreme Court, *Capps v. Wood,* 110 Idaho 778, 718 P.2d 1216 (1986) (*Capps I*), in a quiet title action. The district court held that the Capps had failed to prove they were entitled to the property in question. The issues on the present appeal are whether the district court erred in ruling that the Capps were precluded, on res judicata grounds, from seeking specific performance of an oral agreement to acquire title to the land; whether the trial court should have held a trial de novo on the remand; and whether the Capps were required to prove a theory of adverse possession in order to prevail on their quiet title claim. We affirm.

The case comes to us with the following background. In 1978, the Capps brought this action to quiet title in their name to a parcel of land in Washington County and to recover damages for alleged trespass and slander of title. Named as defendants in the action were the personal representatives of the estate of Thomas Burton, deceased; Frank and Robert Shirts, purchasers of the disputed parcel from the Burton estate; and Frank Davison, attorney for the estate. Prior to trial, Mr. Davison was dismissed from the action. After trial, judgment was entered in favor of the remaining defendants. The Capps appealed (*Capps I*), asserting that the trial court erred in concluding that the Capps had failed to establish title to the disputed property on an adverse possession theory; that the court erred in excluding testimony under I.C. § 9–202(3), the dead man's statute; and that the court erred in striking the testimony of a bookkeeper (an employee of Burton's certified public accountant) who had testified concerning a rental payment made by Burton to the Capps in 1973.

In *Capps I,* the Supreme Court upheld the exclusion of testimony under I.C. § 9–202(3) concerning an oral arrangement between the Capps and Burton for the sale and purchase of the disputed property prior to Burton's death. However, with respect to the testimony of the bookkeeper, the Court held that this evidence should not have been disregarded by the trial court. The record in *Capps I* shows that, after the bookkeeper had testified, the trial court became persuaded that the bookkeeper's testimony was a privileged or confidential communication under I.C. § 9–203A and would have to be excluded from consideration. The Supreme Court disagreed. It ruled that I.C. § 9–203A did not apply to testimony by the bookkeeper as to an entry made in the ordinary course of business, reflecting the purported rental payment by Burton to Capps. Noting that the Capps' claim to title to the property was predicated upon adverse possession for a five-year period (*see* I.C. § 5–206), and observing that the Capps asserted they were Burton's landlord (*Capps I,* 110 Idaho at 780, n. 1, 718 P.2d at 1218, n. 1), the Court concluded that the bookkeeper's testimony about a rental payment made by Burton to the Capps in 1973 "could have established the

five-year possession." 110 Idaho at 782, 718 P.2d at 1220. Consequently, the Supreme Court remanded the case to the district court with directions to reconsider its findings in light of the admissibility of the bookkeeper's testimony.

Upon remand, district judge Doolittle, who had presided over the trial, granted a motion by the Capps to disqualify himself from proceeding further with the action. The case was reassigned to district judge Goff. The Capps then filed a motion for summary judgment, asserting that a settlement agreement had been reached by the parties in 1977, prior to filing the complaint in this action, in which the defendants had agreed to convey the disputed property to the Capps. The Capps requested judgment for specific performance of the alleged agreement. In response, the defendants maintained that no such agreement was ever made, that in 1977 the property had already been sold by the estate to the Shirts, that no claim for specific performance of any purported settlement agreement had been alleged in the Capps' complaint in this case and that such a claim was precluded by res judicata because it was never raised until after the appellate proceeding in *Capps I* was final. By cross-motion, the defendants requested summary judgment in their favor on the settlement-agreement issue.

At the hearing on the summary judgment motions, the Court invited further briefing from the parties on the question whether a new trial was necessary as a result of the remand from the Supreme Court. Eventually, Judge Goff granted a summary judgment to the defendants on the settlement-agreement issue, determining that the issue was barred by res judicata because it had not been raised in the proceedings resulting in *Capps I*. He also decided that a new trial was not necessary. He issued an order modifying the findings of fact and conclusions of law previously entered by Judge Doolittle following the trial. In this order Judge Goff made findings with respect to the bookkeeper's testimony theretofore excluded by Judge Doolittle, and he reached the conclusion that although the bookkeeper's testimony corroborated testimony that Burton may have been a tenant of the Capps, the Capps still had not proven they had been in possession of the property for a five-year period, as required by I.C. § 5–206, before their action was filed in 1978. Judge Goff then adopted the judgment previously entered by Judge Doolittle in favor of the defendants, without further modification or amendment. A motion by the Capps to reconsider these rulings was denied and this appeal followed.

## ·I

We turn first to the issue concerning the alleged settlement agreement. In their complaint to quiet title and to recover damages for trespass and slander of title, the Capps alleged that, on or about November 9, 1977, they met with the parties who eventually were named as defendants in the action. The complaint recites that those parties agreed to conduct a survey of a fenceline located on the property and, upon completion of the survey, to give to the Capps a quitclaim deed to the disputed parcel. The complaint did not pray for specific performance of the alleged agreement. During trial, the Capps presented testimony concerning the settlement averred in their complaint. The defendants also presented testimony to refute the Capps' evidence. One of the defendants, Robert Wood, testified that although the parties had attempted to negotiate a settlement in order to avoid litigation, the attempt was unsuccessful. He stated that the estate had never agreed to give the Capps any deed to the property in question. In his findings of fact and conclusions of law, Judge Doolittle determined that the Capps had not proven any right to the disputed parcel of land. His decision did not explicitly refer to the settlement agreement.

When the Capps pursued their appeal in *Capps I*, no issue was raised with respect to the settlement agreement. As noted by Judge Goff, the enforcement of that agreement was urged for the first

time after the case had been remanded to the district court. Judge Goff determined that res judicata, resulting from the failure of the Capps to assert enforcement of the agreement in their appeal in *Capps I,* precluded consideration of that question on remand. We believe that Judge Goff erred by applying the doctrine of res judicata. Instead, we conclude that the Capps were barred from urging the settlement agreement as a claim for relief on remand, under the similar but related doctrine of "law of the case." Therefore, because the judgment in favor of the defendants can be upheld upon another, correct theory, the result reached by Judge Goff will be sustained. *Andre v. Morrow,* 106 Idaho 455, 680 P.2d 1355 (1984).

■■■ Res judicata precludes the relitigation of a matter previously adjudicated. *Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct.App.1983) (review denied). It is premised upon the entry of a valid and final judgment. RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982). Here, the judgment entered by Judge Doolittle was specifically reversed by the Supreme Court and the case was remanded to the district court. 110 Idaho at 782, 718 P.2d at 1220. As a result, there simply was no final "judgment" that would stand as a bar under res judicata to the assertion of new claims or theories by the Capps on the remand. However, under the "law of the case" principle, on a second or subsequent appeal the courts generally will not consider errors which arose prior to the first appeal and which might have been raised as issues in the earlier appeal.[1] *See* 5 AM.JUR.2d *Appeal and Error* § 752 (1962). This approach discourages piecemeal appeals and is consistent with the broad scope of claim preclusion under the analogous doctrine of res judicata. We hold that the alleged settlement agreement is not a viable issue in the present appeal because it was embraced by the judgment from which the first appeal was taken yet was not raised in that appeal.

## II

■■■ We turn next to the Capps' contention that the district court erred in not conducting a new trial in this action. As noted earlier, Judge Goff on remand simply modified the findings made by Judge Doolittle, after taking into account the trial testimony of the bookkeeper contained in the transcript prepared for the appeal in *Capps I.* A new trial was not mandated by the Supreme Court in its remand order, and Judge Goff's decision to proceed ·without conducting a de novo trial was compatible with that order. We previously have held that it is within a trial court's discretion to determine whether an existing record is sufficient, or should be supplemented, in order to make the required findings of fact and conclusions of law on remand. *Sherry v. Sherry,* 111 Idaho 185, 722 P.2d 494 (Ct.App.1986). We find no abuse of that discretion in this case.

## III

Finally, the Capps argue that the district court erred by finding that they had not proved their claim of title to the disputed property on a theory of adverse possession. The Capps contend that they in fact held a quitclaim deed to the property and that the burden to show a claim by adverse possession should have rested with the defendants and not with the Capps. We are not persuaded by their argument.

---

**1.** In *Shrives v. Talbot,* 91 Idaho 338, 421 P.2d 133 (1966), our Supreme Court mixed this rule with the rule prohibiting consideration of issues on appeal that were not first presented to the trial court. The Court said:

In their second assignment of error the Shriveses contend rescission should have been denied because of laches on the part of Talbots. This issue was not raised in the trial court, either in the first trial or in the second trial, nor was it raised on the first appeal [*Shrives v. Talbot,* 88 Idaho 209, 398 P.2d 448 (1965)] or in the petition for a rehearing from the decision of the first appeal. It will not now be considered by this court, having been raised for the first time on the second appeal.

91 Idaho at 346, 421 P.2d at 141.

A

■ As to the Capps' deed, the trial judge ruled that it was "outside the chain of title" to the property in question. The court's determination is supported by the following evidence presented at the trial. The property in dispute consists of 11.42 acres of land located adjacent to and southeast of the Weiser River. At one time this acreage lay northwest of the Weiser River. In 1958, the river was rechanneled some distance to the west by Burton. As a result of the rechannelling of the river, the 11.42 acres here in question became situated on the southeast side of the river. In 1968, ten years after the river had been moved, Capps acquired a parcel of land on the northwest side of the river, with its described boundary at the centerline of the river. The Capps conveyed that property to a Mr. Scott in 1970. Subsequently, in 1971, the Capps obtained a quitclaim deed from Scott to the 11.42 acres lying east of the river. Scott testified that, although he signed the quitclaim deed at Capps' request, he believed he did not own any property on the east side of the river.

■ Clearly, unless Capps could establish Scott's ownership of the disputed parcel at the time the property was conveyed by quitclaim deed from Scott to the Capps, then that conveyance would be extrinsic to the chain of title to the property. Scott's source of title came from the Capps. Their 1971 deed to Scott, and the earlier 1968 deed to the Capps, "used the center line of the Weiser River as a starting point and conveyed property situated 'northwesterly of the Weiser River.'" *Capps I*, 110 Idaho at 779, 718 P.2d at 1216. The Capps asserted no claim to the disputed parcel either by way of a theory of accretion or of avulsion.[2] Consequently, we agree with the trial court's determination that the deed from Scott to Capps was outside the chain of title to the property in question.

**2.** *See generally, Aldape v. Akins, supra,* 105 Idaho at 256, n. 1, 668 P.2d at 132, n. 1; *Nesbitt v. Wolfkiel,* 100 Idaho 396, 598 P.2d 1046 (1979). Although the movement of the river in 1958 would not have affected property boundaries then existing, under the doctrine of avulsion,

B

■ Nor was the trial judge incorrect in deciding this case on a theory of claim by adverse possession. In the Capps' complaint, adverse possession was pleaded in the alternative to fee ownership. The claim of fee ownership failed and no issue concerning it is viable in the present appeal. The case was thus narrowed to one of adverse possession, as observed by our Supreme Court in *Capps I.* The Capps, as plaintiffs, had the burden of proof on this claim with evidence showing the strength of their *own* title, rather than merely attacking the defendants' title. It has long been settled that a party seeking to quiet title against another must succeed on the strength of his own title and may not merely rely on the weakness of his adversary. *See e.g., Pincock v. Pocatello Gold & Copper Mining Co.,* 100 Idaho 325, 597 P.2d 211 (1979).

■ One of the findings made by the district court, which was not challenged on the appeal in *Capps I,* was that the Capps never built or maintained any enclosure around the subject property. *See* I.C. §§ 5–208(2), 5–210(1). The court noted that the evidence showed a meandering barbed wire fence on the property, built by employees of the defendants' predecessor, Burton, to separate livestock. It is well settled that persons claiming title by adverse possession must establish—as one of the elements of such claims—that they constructed or maintained an enclosure on the disputed parcel of land to indicate the extent of their claim. *Loomis v. Union Pacific Railroad Co.,* 97 Idaho 341, 544 P.2d 299 (1975); *Christle v. Scott,* 110 Idaho 829, 718 P.2d 1267 (Ct.App.1986). A fence erected by a neighbor for the purpose of containing livestock or to restrain livestock from entering the neighbor's property will not suffice to satisfy the enclosure requirement for adverse possession by a claimant adjacent to the neighbor's property. Here

this would not necessarily imply that *subsequent* conveyances referring to the "Weiser River" would be deemed to run to an old, previously existing river channel. Neither has Capps presented any authority in support of such an implication.

it is undisputed that Capps did not enclose the property in question. The district court's finding is supported by substantial evidence and is not clearly erroneous. I.R. C.P. 52(a). Consequently, we uphold the district court's conclusion that Capps failed to prove their claim of adverse possession.[3]

Finding no error in the proceedings below, we affirm the judgment of the district court. Costs to respondents; no attorney fees awarded.

BURNETT, J., and SMITH, J., Pro Tem., concur.

3. The judgment dismissed the quiet title action brought by the Capps. The district court was not asked to determine—nor did it determine— the rights of the defendants or of any other possible parties to all or any part of the property in question.