151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Herman E. BISHOP, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant-Appellee.
 No. 97-4065.
 United States Court of Appeals, Seventh Circuit.
 Argued June 1, 1998.
Decided June 22, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, No. 96 C 2185. Harold A. Baker, Judge.
 Before Hon. RICHARD D. CUDAHY, Hon. FRANK H. EASTERBROOK, and Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 On October 2, 1990, the plaintiff, Herman Bishop, applied to the Social Security Administration, then part of the Department of Health and Human Services, for disability insurance benefits, see 42 U.S.C. § 423. In 1992, following a hearing before an administrative law judge, the Secretary denied the application. Bishop asked for a second opinion from the district court. See 42 U.S.C. § 405(g) (1988). The district court considered four issues raised by Bishop: (1) testimony as to non-exertional limitations, (2) a physician's report regarding severe disabling psychological problems, (3) evidence of mental impairments, and (4) the Secretary's reliance on the medical-vocational guidelines, 20 C.F.R. § 404.1569 & pt. 404, subpt. P, app. 2.
 
 
 2
 On the first issue, the district court concluded that the Secretary's rejection of Bishop's subjective complaints of work-related limitations was not clearly erroneous: "[The Secretary] fully considered the plaintiff's subjective complaints, and found them to be inconsistent with the plaintiff's daily activities and the medical evidence." Br. of Appellant & Short App. 58. On the second and third issues, the district court also saw no clear error in the Secretary's findings that Bishop did not suffer from severe disabling psychological problems, or from severe affective disorders (disturbances of mood accompanied by manic or depressive syndrome) or personality disorders. Id. at 58-60. On the fourth issue, however, the district court decided that since Bishop had exertional and nonexertional limitations--because of heart and circulatory problems Bishop could climb only occasionally, lift no more than 15 pounds, and had to avoid heights, humidity, extreme temperatures and moving machinery, see Loose Pleadings 270-71--the Secretary's use of the medical-vocational guidelines was a mistake. See DeFranceso v. Bowen, 867 F.2d 1040, 1045 (7th Cir .1989). The district court remanded the case to the Secretary to "take[ ] testimony from a vocational expert to tailor the jobs available to the plaintiff's specific impairments, including the positional and environmental restrictions." Br. of Appellant & Short App. 61. The district court stated in closing that "[i]n all other respects the decision of the [Secretary] is sound." Id. Bishop did not appeal the district court's decision remanding. See Forney v. Apfel, 524 U.S. 266, 118 S.Ct. 1984, 141 L.Ed.2d 269, 1998 WL 309063 (U.S. June 15, 1998).
 
 
 3
 On August 4, 1994, the Appeals Council of the Social Security Administration, Department of Health and Human Services, "vacate[d] the final decision of the Secretary and remand[ed] the case to an Administrative Law Judge for further proceedings consistent with the order of the [district] court." Loose Pleadings 456. An administrative law judge took testimony from a vocational expert during a hearing held on November 29, 1994. On the basis of that testimony, the second ALJ concluded that until June 30, 1994, Bishop could perform a significant number of jobs in the economy--"38,448 light assembly positions and 22,110 light hand-packaging positions in the State of Illinois." Br. of Appellant & Short App. 44. The second ALJ also reviewed the evidence of two 1991 medical reports, one concluding that Bishop was capable of lifting up to 25 pounds, and one concluding he could lift up to 15 pounds, id. at 42, and expressly found that Bishop "was capable of lifting and carrying up to 20 pounds at a time or ten pounds frequently and doing frequent standing and walking, placing him at a light level of exertion," id. at 43.
 
 
 4
 The second ALJ found that Bishop's increasing chest pain and shortness of breath as of June 30 limited Bishop to sedentary work from that date. (Bishop had undergone coronary bypass surgery in September 1994.) The ALJ found that, given Bishop's limitations, there were not enough suitable sedentary jobs for Bishop, and ruled that Bishop was entitled to disability insurance benefits beginning June 30, 1994.
 
 
 5
 Subsequently the Commissioner of Social Security assumed the Secretary's responsibilities for Bishop's case, cf. Rohan v. Chater, 98 F.3d 966, 967 n. 1 (7th Cir.1996); Yancey v. Commissioner, 1998 WL 257323, at * 9 n. 1 (2d Cir. May 22, 1998), and made the final administrative decision to deny Bishop's claim for benefits prior to June 30, 1994: on June 5, 1996, the Commissioner's Appeals Council declined to review the ALJ's 1994 decision. See Jones v. Shalala, 10 F.3d 522, 523 (7th Cir.1993). The district court affirmed the Commissioner's final decision. See Br. of Appellant & Short App. 21; 42 U.S.C. § 405(g) (1994).
 
 
 6
 In Bishop's appeal of the district court's judgment, he contests the district court's conclusion that the Commissioner's decision is supported by substantial evidence, and argues that the Commissioner improperly applied the principal of res judicata to prevent Bishop from raising issues that had been covered by the Secretary's 1992 decision.
 
 
 7
 Bishop begins his argument with the overreaching contention that "[i]f a claimant cannot perform a full range of light work, the claimant is limited to, at the most, sedentary work." Br. of Appellant & Short App. 10. This assertion is contradicted by case law, see, e.g., DeFrancesco, 867 F.2d at 1045, and by his reply brief, Bishop has retreated to the innocuous observation that "where one has significant restrictions relative to light work, it is not appropriate to view the abilities the same as for on who has some minor restrictions." Reply Br. of Appellant 3. Bishop's actual point seems to be that his limitations were so severe that the ALJ erred in instructing the vocational expert to evaluate Bishop's ability to work in terms of a hypothetical person who was "limited to a full range of light work" with specified exceptions, Tr. 18; Loose Pleadings 368. Apparently, Bishop would have had the ALJ come to this conclusion on her own, without even consulting the vocational expert.
 
 
 8
 Of course we are not qualified to say whether Bishop's limitations are so severe that Bishop should be considered incapable of doing any light work at all. And apparently none of the Commissioner's regulations settles the matter either. (Not Social Security Ruling 83-12, see Br. of Appellant & Short App. 74-79; Peterson v. Chater, 96 F.3d 1015, 1016 (7th Cir.1996); Books v.. Chater, 91 F.2d 972, 980-81 (7th Cir.1996); DeFranceso, 867 F.2d at 1045; Soliz v. Chater, 82 F.2d 373, 375 (10th Cir.1996); Kelley v. Chater, 62 F.3d 335, 338 (10th Cir.1995), the only regulation cited by Bishop.) That is the point of obtaining the testimony of a vocational expert when a case does not fall squarely within the medical-vocational guidelines. The issue is whether, given Bishop's limitations, the vocational expert has properly identified a significant number of jobs Bishop can perform in the region in which Bishop lives, "regardless of whether a specific vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); see Lee v. Sullivan, 988 F.2d 789, 792 (7th Cir.1993). We turn to that question.
 
 
 9
 Bishop contends that the light assembly jobs identified by the vocational expert are unsuitable because of Bishop's lack of finger dexterity. The only evidence in the record of this limitation is subjective, however--the claimant's reports of symptoms to physicians, Loose Pleadings 143, 145, 503, and to the second ALJ, id. at 358, 359. A limitation cannot be established solely by a claimant's own report. See 20 C.F.R. § 416.928(a). The record must contain medical evidence, in the form of observable abnormalities or laboratory findings, that "shows the existence of a medical impairment(s) ... which could reasonably be expected to produce" the alleged limitation. Id. § 416.928(b); see Pope v. Shalala, 998 F.2d 473, 482-86 (7th Cir.1993).
 
 
 10
 In Bishop's reply brief, he contends that objective medical evidence establishes that he suffers from diabetes, and that his lack of finger dexterity is a symptom of diabetes. Reply Br. of Appellant 3. Since this argument first appears in the reply brief, we consider it to have been waived. See James v. Sheahan, 137 F.3d 1003, 1008 (7th Cir.1998). In addition, Bishop points to no evidence in the record demonstrating that hiss diabetes "could reasonably be expected to produce" the asserted limitation. In some circumstances, it might be the Commissioner's responsibility to develop this record. See 20 C.F.R. § 416.929(b) ("At the administrative law judge hearing or the Appeals Council level, the administrative law judge or the Appeals Council may ask for or consider the opinion of a medical advisor concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms."). If Bishop did not attempt to link his alleged lack of finger dexterity to a "medically determinable impairment," however, then he is responsible for any deficiency in the record on this point. Since the number of light assembly jobs alone would provide substantial evidence supporting the Commissioner's finding, see Lee, 988 F.2d at 794, we need not consider Bishop's arguments pertaining to the hand-packaging jobs.
 
 
 11
 Bishop also argues that the vocational expert was required to take into account Bishop's alleged 15-pound lifting capacity. See Br. of Appellant & Short App. 15. But the ALJ found that Bishop was capable of lifting 20 pounds, id. at 43, 45, and Bishop does not challenge that finding as lacking substantial evidentiary support. Bishop might have argued that this finding exceeded the scope of the Commissioner's mandate under the district court's remand order, but Bishop presumably did not want to cloud up his own argument, discussed below, that the Commissioner was obligated to revisit all the issues from the first hearing.
 
 
 12
 That leaves Bishop's contention that the second ALJ improperly applied the principle of res judicata. In the course of the testimony of the vocational expert, Bishop attempted to query the expert about the suitability of certain jobs for a person with certain mental and psychological impairments. Tr. 30-33; Loose Pleadings 380-83.
 
 
 13
 Plaintiff's Counsel: If the individual has a poor ability to behave in an emotionally stable manner, would that affect [the jobs available]?
 
 
 14
 ALJ: Why don't you show her what you're reading from and just ask her to consider all of them and get some kind of report or whatever. It might be easier than just asking one at a time, although I think that ground was pretty well covered in the last decision.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 ALJ: Are you talking about a report, though, that was done before the last decision?**** It was in the record. It's already been decided whether that report has been accepted or not.
 
 
 18
 Plaintiff's counsel: Yes, I am referring to reports that were decided then.
 
 
 19
 ALJ: Okay. That would be race judicata as I'm looking from the decision and answering questions that the Court wanted me to at the time of that decision and then I will consider as a totally new case everything that's happened since then so that pretty much will be race judicata as far as the weight that was given to that report and apparently not much was.
 
 
 20
 Tr. 32-33; Loose Pleadings 382-382. The ALJ discussed the mental and psychological impairments in her written decision:
 
 
 21
 Concerning [Bishop's] mental condition prior to June 30, 1994, the prior decision found [Bishop] did not have a severe mental impairment. The undersigned finds that the impairments were mild and would not have prevented [Bishop] from performing unskilled work. The evidence concerning mental problems was thoroughly reviewed by Administrative Law Judge Altman and his conclusions were supported by the District Court. There is no new or material evidence in the record to change those determinations.
 
 
 22
 Br. of Appellant & Short App. 43.
 
 
 23
 Bishop argues that at the post-remand hearing, "the [second] ALJ should have developed the record fully and allowed all questioning and considered all the evidence anew. The ALJ should have determined based on all the evidence the date of onset of the disability which was found to exist rather than treating the original hearing as res judicata as to anything." Id. at 18. Since Bishop has not specified any material evidence that was excluded from the record or attempted to demonstrate prejudice from any omissions, the state of the record does not warrant either reversal or a remand. See Nelson v. Apfel, 131 F.3d 1228, 1236 (7th Cir.1997).
 
 
 24
 As to the application of res judicata generally, despite the ALJ's use of the term "res judicata" during the hearing, it is evident from the written decision of the second ALJ--which does not use that term--that she was applying the doctrine of the law of the case, rather than (misapplying) issue preclusion or claim preclusion. So a sufficient ground for rejecting this point is simply that the ALJ did not apply res judicata, despite her shorthand use of that term--which is sometimes used in conjunction with "law of the case," see 18 Wright et al., Federal Practice and Procedure: Jurisdiction IX-XI (1981); Circuit Rule 53(b)(2)(iv); cf. Amcast Indus. Corp. v. Detrex Corp., 45 F.3d 155, 157, 160 (7th Cir.1995); Capps v. Wood, 117 Idaho 614, 790 P.2d 395, 398-99 (Idaho Ct.App.1990)--in the hearing. Indeed, in the plaintiff's objections to a magistrate judge's recommendation to the district court, the plaintiff did not even argue that the second ALJ misapplied "res judicata"; he only argued that the ALJ misapplied the law of the case. See Objections to Report & Recommendation, R. 12, at 10-11.
 
 
 25
 We will construe Bishop's argument as a challenge to the application of the law of the case doctrine. But Bishop cites no relevant legal authority on the question. This would be acceptable if there were none, but there is, and it is cited and discussed in the decision of the district court. See Br. of Appellant & Short App. 36; Key v. Sullivan, 925 F.2d 1056 (7th Cir.1991); Angevine v. Sullivan, 881 F.2d 519 (7th Cir.1989). Therefore this issue is also waived. See Kyle v. Morton High School, 1998 WL 23100, at * 9 (7th Cir. May 11, 1998); Kelly v. Municipal Courts, 97 F.3d 902, 910 (7th Cir.1996); United States v. Benson, 67 F.3d 641, 646 n. 3 (7th Cir.1995).
 
 
 26
 Further, we observe that in Key, this court held that "the (Commissioner) was not free to disregard the narrow remand directions of the district court." 925 F.2d at 1061. Bishop has not attempted to explain why that principle should not apply to this case, notwithstanding the Appeals Council's order describing its own remand as "vacat[ing]" the previous decision of the Secretary. Bishop does not argue that the principle should not apply when the Commissioner, rather than the claimant, seeks to rely on the law of the case. Bishop makes no appeal to the axiom that "a district court's adherence to law of the case cannot insulate an issue from appellate review." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Most important, Bishop does not contend that the Commissioner's conclusion that Bishop was not suffering from severe mental and psychological impairments was not supported by substantial evidence, and so Bishop cannot claim that he was prejudiced by the application of the law of the case.
 
 AFFIRMED