**249 P.2d 915**

**CLAUNCH v. WHYTE et al.**

**No. 7877.**

Supreme Court of Idaho.
Nov. 6, 1952.

Robert M. Kerr, Jr., Marion J. Callister and J. Blaine Anderson, Blackfoot, for appellant.

Donald R. Good, Blackfoot, for respondents.

TAYLOR, Justice.

Appellant (plaintiff) brought this action to quiet title to an undivided one-half interest in certain real property in Bingham County, Idaho. The respondents (defendants), wife and husband, by cross complaint sought and obtained a decree quieting title in the respondent Phyllis Whyte, based on a quitclaim deed given to her by the plaintiff.

The question presented is as to whether or not the deed was delivered by the grantor to the grantee with the intent to immediately pass title.

The property in question was the community property of the plaintiff and her deceased husband, William M. Claunch. Defendant Phyllis Whyte is the daughter of the deceased by a prior marriage. The plaintiff and the deceased were married in 1938. At that time Phyllis was thirteen years of age. Phyllis was married to defendant Stanley Whyte in 1946. In the spring of 1947 she and her husband took up residence on land owned by her father. The arrangement was that she and her husband would operate her father's land and the land in question on a "fifty-fifty basis." That is, the defendants as tenants would receive one-half of the crops and one-half of the proceeds of the livestock. Mr. Claunch died in April, 1948, and the defendants continued to operate the property thereafter on the same basis by agreement with the plaintiff. The Claunches appar-

ently had some interest in oil lands in Texas and, after the death of Mr. Claunch, the plaintiff began planning a trip to Texas in the fall after the harvest. She was in poor health and suffering from a heart condition, which caused her to believe that she might not survive the trip. She testified that her feeling toward Phyllis was as for a daughter; that they had always been on intimate and friendly terms and that she "had all the love in the world for Phyllis." On or about November 4, 1948, she went to an attorney and had a quitclaim deed drawn, purporting to transfer this property to Phyllis. This deed she personally handed to Phyllis, stating at the time, according to her testimony, that if anything happened to her while away she wanted Phyllis to have the property. She packed her clothes in December, intending to leave in January, 1949, after she had paid her income taxes. Sometime in December, while these preparations were being made, she gave Phyllis an instrument in her own handwriting transferring to Phyllis all of her cattle, "in case she did not return" from the trip. Unprecedented winter weather delayed her departure until March. Just before leaving she gave Stanley Whyte permission to sell the "early" cattle during her absence and deposit her share to her account at the bank. This direction was carried out.

After her return from the trip she observed that the attitude of the defendants was cool, and in July Stanley advised her that he was going to quit the operation of the property and go to school in the fall. When fall came the parties settled on the basis agreed upon, and the defendants, having decided to leave the farm, the plaintiff sold all of her cattle and farm machinery. In February, 1950, the defendants moved from the farm to Pocatello, in Bannock County, to accept employment there. Plaintiff paid the taxes on the property for the years 1948, 1949 and 1950. She further testified that she had great confidence in Phyllis and trusted her implicitly.

Mr. J. H. Andersen, an attorney who had practiced his profession in Blackfoot for many years and who prepared the quitclaim deed at plaintiff's request, testified that when she came to his office with the request that he prepare the deed she stated that she had a heart condition and was going away and did not know whether she would ever come back; that she might die and wanted to deed the property to Mrs. Whyte in case she didn't come back; that if she died she wanted Mrs. Whyte to have the property; that he suggested to her that Mrs. Whyte might not give it back, to which she responded, "I trust her" and "she will give it back."

The deed was recorded in February, 1950, after the defendants had moved to Pocatello. The plaintiff testified she first learned of the recording in May, 1950, and that was her first knowledge that the defendants claimed the property. Her complaint herein was filed September 7, 1950.

Defendant Phyllis Whyte denied that plaintiff said she was to have the property in case anything happened to plaintiff while she was away, and testified that when plaintiff handed her the deed the plaintiff stated she did so to carry out the wishes of the deceased, William Claunch. Although the record shows the defendant Stanley Whyte was present at the time this deed was delivered, it is noted that he did not corroborate his wife's testimony as to what plaintiff said was the reason for the delivery of the deed. He testified she handed the deed to his wife and said, "this shouldn't be recorded until after the *probation* is completed." Both the defendants testified that no consideration was paid or given by them for the deed; that they offered to pay taxes in 1948, but that the plaintiff volunteered to pay the taxes because she was running cattle on the property; and the reason they did not pay the 1949 taxes was "under the same conditions as 1948"; that in December, 1950, they offered to pay the taxes for that year, but plaintiff refused to accept the offer and asked for the deed. They both further testified that no change with respect to the property or its operation or in the division of proceeds occurred after the alleged delivery of the deed; that the reason they had not recorded the deed earlier was that the plaintiff requested that it be not recorded before the pending probate proceedings were closed. The plaintiff denied that she made any such request. The probate proceedings were closed by decree dated June 20, 1949. By this decree the property in question was distributed to the plaintiff. No reference was made in those proceedings to any interest claimed by defendants. Mrs. Whyte testified that she kept the deed and the instrument conditionally transferring the cattle to her, in her trunk, and that she had destroyed the document having to do with the cattle.

On cross-examination of plaintiff, defense brought out a denial by her that the deceased, William Claunch, at the time of his last illness, had expressed a wish that Phyllis have this property. On rebuttal Phyllis averred such statement by deceased. Although appearing to have merit, we do not find it necessary to consider appellant's objection to this rebuttal as an improper impeachment on a collateral matter. Sufficient here that it is regarded as the weakest kind of evidence. In re Emerson's Estate, 175 Cal. 724, 167 P. 149; Herbert v. Lankershim, 9 Cal.2d 409, 71 P.2d 220; Wayman v. Miller, 195 Wash. 457, 81 P.2d 501. There is also testimony that the old gentleman said "when he got well he was going to have the mess cleaned up", and that "he was going to make out a will." It is evident the testimony objected to has little probative value.

The trial court found that the deed was delivered "unconditionally." This is assigned as error and presents the controlling issue on this appeal. Respondents cite the rule that the deed, being found in the possession of the grantee, the pre-

sumption arises that it was "delivered", and contends that this casts the burden upon the grantor to overcome that presumption. This rule is of doubtful application in this case because it is admitted that the deed was manually given into the hands and custody of the grantee by the grantor. The grantor contends the delivery was conditional; that the deed was not to become effective nor the title to pass in the event she returned from her contemplated journey. This court has held that "The intention of the parties, particularly the grantor, is an essential and controlling element of delivery of a deed. It has been called 'the essence of delivery'". Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264, 266. This is the generally accepted rule. Flynn v. Flynn, 17 Idaho 147, 104 P. 1030; In re McConkey's Estate, 33 Cal.App.2d 554, 92 P.2d 456; Dinneen v. Younger, 57 Cal. App.2d 200, 134 P.2d 323; Huth v. Katz, 30 Cal.2d 605, 184 P.2d 521; Szekeres v. Reed, 96 Cal.App.2d 348, 215 P.2d 522; Seibert v. Seibert, 379 Ill. 470, 41 N.E.2d 544, 141 A.L.R. 299, note 305; 56 A.L.R. note 746; 16 Am.Jur., Deeds, § 115. .

Manual delivery of a deed by the grantor to the grantee with the understanding that it is not to become effective until the death of the grantor is not such a delivery as will pass the title. Crenshaw v. Crenshaw, supra; Zimmerman v. Fawkes, 70 Idaho 389, 219 P.2d 951; Counter v. Counter, 104 Cal.App.2d 786, 232 P.2d 551; Cavett v. Pettigrew, 182 Ark. 806, 32 S.W.

2d 808; Basket v. Hassell, 107 U.S. 602, 2 S.Ct. 415, 27 L.Ed. 500.

Admitting that there was no consideration for the deed and contending, as she does, that it conveyed the property to her as a gift inter vivos, the defendant, Phyllis Whyte, brings herself within the rule that such gifts are not presumed and the burden is on the beneficiary to establish the gift. Lo Presti v. Manning, 125 Cal.App. 442, 13 P.2d 1002; 38 C.J.S., Gifts, § 65. Where the donee stands in a fiduciary or confidential relationship to the donor the burden is increased to the extent of requiring the beneficiary to establish the gift by clear and convincing evidence.

"* * * where the gift is to executrices who are shown to be fiduciaries the burden of proof is upon such donees to clearly and unequivocally prove a gift in the first instance, and to so prove it that there would be no uncertainty as to the intent (and other requisite concomitants) on the part of the donor nor any question of undue influence exerted by the donee upon or over the donor or advantage taken of the confidential relationship existing between the parties." In re Estate of Randall, 64 Idaho 629, at page 640, 132 P.2d 763, 768, 135 P.2d 299.

And in Blake v. Blake, 69 Idaho 214, 205 P.2d 495, 498, where the respondents were found to be fiduciaries, it was said:

" * * * the burden of proof was on respondents to prove a gift or transfer of appellant's one-sixth share in the estate to Mrs. Jessie M. Blake by clear, satisfactory, convincing and unequivocal evidence."

Here the plaintiff protested an implicit confidence in Mrs. Whyte and defendants testified that the relationship was friendly and cordial until after they determined to move from the ranch in 1949, and the record shows that in all their dealings the confidence reposed in the defendants by the plaintiff was in all details honored by them with the exception of the deed in question. In Stearns v. Williams, 72 Idaho 276, 240 P.2d 833, 840, this court said:

"A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence.

" * * * the confidential relationship which is protected in equity is synonymous with fiduciary relationship, * * * it exists whether the relationship is technically fiduciary or merely informal, whenever one trusts in and relies on the other, * * *."

Leaving the key to her home and the bill of sale to her cattle with Phyllis while she was in Texas, and instructions to sell marketable cattle and deposit her share while she was gone, were specific impositions of trust. The grantee stood in a confidential relationship to the grantor. Hence, the finding must be supported by "clear, satisfactory, convincing and unequivocal evidence" that the deed was delivered with the present intention on the part of the grantor to divest herself of the title and transfer it irrevocably to the grantee.

■ Actual transfer of the possession of the subject of the gift is an important and often controlling factor in establishing the intent of the donor. Maynard v. Taylor, 185 Okl. 268, 91 P.2d 649; Johnson v. Hilliard, 113 Colo. 548, 160 P.2d 386; Yarbrough v. Bellamy, 197 Okl. 493, 172 P.2d 801; In re Hamilton's Estate, 26 Wash.2d 363, 174 P.2d 301; Gulley v. Christian, 198 Okl. 167, 176 P.2d 812; Stenwall v. Bergstrom, 405 Ill. 281, 90 N.E.2d 778; Cavett v. Pettigrew, 182 Ark. 806, 32 S.W.2d 808; 129 A.L.R., note 35; 16 Am.Jur., Deeds, §§ 132, 133. Here the respondents, being in possession of the property as tenants, continued to attorn to the donor and on their own volition terminated the relationship and relinquished possession of the property before recording the deed or by any other word or act asserting their claimed title. Nor did they during the year 1950 claim any right to control the property or any of the proceeds therefrom. So far as the record

shows, both parties continued to treat the land as the property of the plaintiff until February, 1950. Moreover, the only disinterested witness, who testified concerning the plaintiff's intention in the execution of the deed, was the attorney who prepared it. His testimony corroborates the plaintiff, as do all of the other facts and circumstances mentioned. On the other hand, the testimony of Mrs. Whyte to the effect that the plaintiff said she was carrying out the wishes of her deceased husband, is unsupported except by the bare fact that the deed was given into her keeping. The clear weight of the evidence is against the finding. It follows that the finding is not supported by the evidence and will not support the judgment.

The judgment is reversed with directions to cancel the deed and quiet title in the plaintiff.

Costs to appellant.

GIVENS, C. J., and PORTER, THOMAS and KEETON, JJ., concur.