706 P.2d 1348

**Robert S. KLEIN and Carol A. Klein, tenants in common, Plaintiffs-Appellants,**

v.

**Jack SHAW and Annelise Shaw, husband and wife, Defendants-Respondents.**

No. 15337.

Court of Appeals of Idaho.

Sept. 9, 1985.

---

238

Paul E. Levy of Orndorff, Levy & Mac-Connell, Boise, for plaintiffs-appellants.

Howard I. Manweiler of Manweiler, Bevis & Cameron, Boise, for defendants-respondents.

Before DONALDSON, Acting C.J., and McFADDEN and TOWLES, Acting JJ.

DONALDSON, Acting Chief Judge.

The subject matter of this law suit is a house and lot located at 5140 Parkwood Drive, Boise, Idaho. The respondents, Jack and Annelise Shaw, purchased the property in 1967. As a down payment, they traded their equity in their previous home. The balance of the purchase price was financed by a $24,600.00 loan from First Federal Savings & Loan Association secured by a deed of trust.

Jack Shaw is a commercial artist. He operated a design business called "Shaw Displays" until his retirement in 1978. Annelise Shaw is employed as an accounts payable clerk for Albertson's, Inc. The Shaws have six children, one of whom was living at home at the time of trial. The record reflects that Jack Shaw was a poor businessman and that the Shaws were in financial difficulty throughout most of their marriage.

Shortly after the purchase of the Parkwood property, the Shaws became delinquent on their mortgage payments. In late 1969 or early 1970, First Federal informed them that it intended to instigate foreclosure proceedings. At that point, the Shaws turned to appellant, Robert Klein, for help.

Robert Klein is a professional life insurance agent with college training in business administration. The Kleins and the Shaws became acquainted in 1968 when Robert Klein sold the Shaws mortgage life insurance on the Parkwood property. Thereafter, their business relationship evolved into a friendship, with the couples socializing in each other's homes.

In exchange for a second deed of trust on the Parkwood property and an assignment of Jack Shaw's life insurance policy, Robert Klein agreed to loan the Shaws $2,750.00 to cure the default in their mortgage payments, and to act as a management consultant for Shaw Displays. The consultant relationship lasted only a few months, during which time Robert Klein became familiar with the Shaw's business affairs.

In April of 1971, the Shaws were again facing foreclosure on their home. Again, they turned to their friend Robert Klein for help. Klein came up with the following proposal: The Shaws would deed their house to him. He would assume the payments to First Federal and lease the house back to the Shaws. The Shaws contend—and the trial court found—that Klein promised to reconvey the house to them when they "got back on their feet." Klein, on the other hand, contends that the Shaws elected to deed the property to him in lieu of foreclosure of the second deed of trust and that there was no agreement to reconvey. He did testify in the original trial on this matter, that he had initially intended to reconvey to the Shaws if within one year they had given him between $4,000.00 and $4,500.00 and had reassumed the obligation to First Federal.

On April 30, 1971, the Shaws executed a warranty deed absolute on its face, to the Parkwood property to the Kleins. The Kleins acquired the property for approximately $1,500.00 in payments to junior lienholders. The Shaws continued to reside in the home pursuant to "rent agreements" entered into between the parties. The rent was initially $325.00 per month; over the years that amount was increased to $470.00.

The mortgage payment to First Federal is $169.00 per month and taxes on the property were estimated at $30 to $50 per month. The Shaws testified that they assumed that the amount they paid in excess of the mortgage and taxes was to retire their debt to the Kleins. The Shaws testified that whenever they asked Robert Klein what they had to do to get their property back he refused to provide specific terms.

After the completion of the transaction detailed above, the parties remained friends and continued their social relationship. Carol Klein was not informed of the transfer until the Kleins divorced in 1979. She testified that she always thought the house belonged to the Shaws. The Shaws financial difficulties continued and they were frequently in arrears on their rent payments.

In the mid-70's, Jack Shaw suffered serious health problems. Annelise Shaw contacted Robert Klein about reconveying the property. She testified that Klein told her not to worry, she would never lose her home. In August of 1978, Robert Klein wrote Annelise Shaw about a lapse in Jack Shaw's life insurance. He advised her that the coverage was an important part of her insurance program as it represented over one-third of the cash down payment toward repurchasing the Parkwood property.

In 1979, Robert Klein sought to increase the rent on the Parkwood property to $600.00 per month. The Shaws refused to pay the increase and sought legal counsel. On January 16, 1981, the Kleins initiated this action for wrongful detainer seeking eviction of the Shaws and damages. The Shaws counterclaimed, alleging fraud and misrepresentation. They asked for specific performance of the oral agreement to reconvey.

The case was originally tried before Judge W.E. Smith. In a tentative memorandum decision dated June 4, 1982, Judge Smith concluded that the parties had created a tenancy in common in the buyer's equity in the Parkwood property, an undivided one-third of such equity being vested in the Kleins and an undivided two-thirds in the Shaws.

Thereafter, the Kleins successfully moved for a new trial. A second trial was held before Judge Deborah Bail on February 8, 9, and 25, 1982. Judge Bail found that the property was transferred to the Kleins subject to an oral repurchase agreement. She further found that Robert Klein was in a confidential relationship with respect to the Shaws and that the Shaws were justified in believing that he would act in their best interest. Based on these findings, Judge Bail concluded that the Kleins held title to the property in constructive trust for the benefit of the Shaws and ordered them to reconvey legal title to the Shaws. The Kleins appeal from that decision.

■ Constructive trusts are created by courts of equity whenever title to property is found in one who in fairness ought not to be allowed to retain it. The defendant is treated as if he or she had been an express trustee from the date of the wrongful holding and is required to reconvey the property to the plaintiff. G.G. Bogert & G.T. Bogert, The Law of Trusts & Trustees § 471 (1978).

■ The Shaws alleged at trial that they deeded their house to the Kleins under an oral agreement that they would be allowed to repurchase it. On appeal, the Kleins assert that any such agreement is unenforceable under the statute of frauds and therefore that the trial court erred in imposing a constructive trust. It is true that the majority of American courts refuse to impose a constructive trust where land is conveyed by absolute deed upon an oral agreement that the transferee will reconvey to the transferor, the theory being that to do so would circumvent the statute of frauds. G.G. Bogert & G.T. Bogert, *supra*, § 495. There is, however, a widely recognized exception to the above rule. Where the owner of an interest in land transfers it inter vivos to another upon an oral agreement to reconvey the land to the transferor, and such an agreement is unenforceable due to the statute of frauds, equity will impose a constructive trust for the benefit of transferor if, at the time of the transfer, the transferee was in a "confidential relationship" to the transferor. G.G. Bogert & G.T. Bogert, *supra*, § 496; Restatement of Restitution § 182 (1937 and Supp.1984).

This Court recognized that exception in *Hanger v. Hess,* 49 Idaho 325, 288 P. 160 (1930). In *Hanger,* the plaintiff, an elderly man, deeded his home to a young divorcee upon her promise to reconvey should she remarry or move away. In finding a constructive trust for the benefit of the plaintiff, we stated:

"Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and

often directly contrary to the intention of the one holding the legal title.... If one party obtains the legal title to property, not only by fraud or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust on the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner." 49 Idaho at 328, 288 P. at 161.

■ The dispositive issue in the present case thus becomes whether the evidence supports Judge Bail's finding that a "confidential relationship" existed between the Kleins and the Shaws in 1971 when the disputed property was transferred. Equity has never bound itself to any hard and fast definition of the term "confidential relationship" and has not listed all the necessary elements of such a relationship but has reserved discretion to apply the doctrine whenever it believes a suitable occasion has arisen. G.G. Bogert & G.T. Bogert, *supra,* § 496; Restatement of Restitution § 182. According to the Restatement of Restitution, a confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. Restatement of Restitution § 166 comment d. A confidential relationship has been found to exist wherever by reason of kinship, business association, disparity in age, etc., the transferee is in an especially close relationship to the transferor, and the latter reposes a high degree of trust and confidence in the former. The betrayal of such confidence is deemed constructively fraudulent and gives rise to a constructive trust independent of any element of actual fraud. The law, from considerations of public policy, presumes such transfers to have been induced by undue influence or other abuse of the confidential relationship to the transferor in procuring

the transfer. G.G. Bogert & G.T. Bogert, *supra*, § 496.

In *Hanger, supra*, the necessary confidential relationship was based on the fact that the plaintiff was an old man who had allowed the defendant and her children to move in with him.

"As a general rule a constructive trust grows out of fraud or confidential or fiduciary relations existing between the parties. Yet we think the principle upon which the doctrine is founded is broader than that. While it is true in this case the ordinary confidential or fiduciary relations are not shown, the evidence does disclose that while respondent had and occupied his separate room, nevertheless the parties lived under the same roof and dined at the same table, the respondent furnishing the fuel and provisions, the appellant doing the housework. Respondent testified he considered appellant a good housekeeper and a good cook. We think the good will and confidence of an old man without a home may be won through comfort and good cooking alone quite as completely as the doctrine in question requires." 49 Idaho at 329, 288 P. at 162.

■ Judge Bail found that Robert Klein, as a friend and former business manager, was in a confidential relationship with respect to the Shaws.

"The personal relationship between the plaintiff Klein and the Shaws was of a sufficient character that the defendants were justified in believing that the plaintiff would act in their interest.... Under the circumstances, equity will effectuate the intent of the parties by recognizing that although legal title existed in Mr. Klein and his wife, beneficial ownership has remained with the Shaws."

Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings are supported by substantial and competent, albeit conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 159 (Ct.App.1983).

■ As was noted above, the record in this case discloses that the parties became acquainted in 1968 when Robert Klein, an insurance agent, sold the Shaws mortgage life insurance. The business relationship evolved into a friendship. In 1970, when the Shaws needed help to save their home, they turned to Robert Klein. He loaned them the necessary funds and began managing their display business, thereby becoming very familiar with their financial affairs. In 1971, with foreclosure again looming, the Shaws turned once more to their friend Robert Klein for assistance. In desperation, relying on his promise that he would reconvey when they "got back on their feet," the Shaws agreed to deed their home to the Kleins. We agree with the trial court's conclusion that, due to the nature of the relationship between the parties, the Shaws were justified in relying on Klein's promise. The record in this case supports the trial court's finding of a "confidential relationship." Under such circumstances, equity will impose a constructive trust in favor of "the one who is in good conscience" entitled to the property. *Hanger, supra* at 328, 288 P. at 161. We have considered the rest of appellants' arguments on appeal and find them to be without merit.

Accordingly, the decision of the trial court is affirmed.

Costs to respondent.

No attorney fees on appeal.

McFADDEN and TOWLES, Acting JJ., concur.