824 P.2d 903

**Lynn ERB, Personal Representative of the Estate of Willis Ghlee Erb, Plaintiff–Respondent–Cross Appellant,**

v.

**Sarah F. KOHNKE, Defendant–Appellant–Cross Respondent.**

**No. 18092.**

Court of Appeals of Idaho.

Jan. 7, 1992.

Petition for Review Denied March 3, 1992.

**330**

Dean Williams, Blackfoot, for defendant-appellant-cross respondent.

Robert M. Kerr, Jr., Blackfoot, for plaintiff-respondent-cross appellant.

SWANSTROM, Judge.

Sarah Kohnke appeals from a judgment quieting title to real property in the estate of Willis Erb. Sarah claims that Willis Erb gave her the real property as a gift because of his love and affection for her. The district court held that the alleged gift was unenforceable because Willis made no written conveyance of his interest in the property to Sarah as is required by the statute of frauds. I.C. §§ 9–503, –505. The district court concluded that a constructive trust was created by operation of law, and that Sarah held legal title to the real property in trust for the benefit of the estate.

The issues we discuss in this appeal are framed by the parties' contentions. Sarah asserts that the gift was not barred by the statute of frauds because the gift was complete when she received title to the property by a written conveyance. In any event, Sarah claims, the written documents, when considered together and in context with the oral testimony, satisfy the statute of frauds. Moreover, Sarah contends that the estate is estopped from claiming the defense of the statute of frauds because she relied to her detriment on Willis's promise to give her the real property. Finally, she argues that she is entitled to costs and attorney fees for defending below and for bringing this appeal. The estate cross-appealed, raising additional issues. We will discuss those issues later in the opinion. For reasons explained below, we reverse and we remand the case for entry of a judgment in favor of Sarah.

## FACTS

Willis was introduced to Sarah in 1984. He was then sixty-eight; she was a few years younger. At that time, Willis was just recovering from surgery. When the couple met, Willis was living in a house on Weeding Lane, near Blackfoot, Idaho, and Sarah was residing in a rented apartment in Blackfoot. The relationship progressed to the point where Willis and Sarah discussed marriage. Eventually, Sarah began taking care of Willis, doing all of his domestic chores. However, no ceremonial marriage was ever performed.

Sarah told Willis that she did not want to live outside of town on Weeding Lane, and that she would not live with him unless it was in her own home. In early May, 1985,

Sarah and Willis began looking for a house where they both could live. Sarah picked out a house at 329 Spruce Street and Willis agreed to buy it. Willis signed a purchase agreement and made a small "earnest money" payment on the property on May 9, 1985. The "buyer" named on the purchase agreement was Willis Erb, a single man, and the payment came from Willis's checking account.

On June 27, 1985, Willis was admitted again to the hospital in Blackfoot. He had surgery on July 10, and his doctors found that he had wide-spread terminal cancer. While in the hospital, Willis sold his house on Weeding Lane.

After some delay, the owners of the Spruce Street property accepted Willis's offer to purchase that property. The realtor located Willis in the hospital and determined that Willis wanted to go ahead with the purchase. The realtor, Wayne Harris, brought the closing documents, including a warranty deed executed by the sellers, to the hospital and reviewed the documents with Willis. Sarah and others were present, but no members of the Erb family were there. When Willis inspected the documents, he noticed that the deed listed him and Sarah as grantees. He asked the realtor to change the deed, so that Sarah would be the sole grantee. The realtor retyped the deed, changing it as requested. The realtor returned to the hospital and showed the new deed and closing statements to Willis who approved them. Willis then signed his personal check, dated July 18, 1985, for $31,393.26 to close the transaction. On July 19, the sellers executed the new deed, and it was recorded the same day.

Willis was released from the hospital on July 26. He stayed at Sarah's apartment briefly until he and Sarah moved into the Spruce Street house. They lived together there for about a month. On September 23, Willis left to visit his son, Lynn, in Kamiah, Idaho. Willis explained to Lynn that he was having trouble getting along with Sarah, and he asked for Lynn's help. Willis returned to Blackfoot with Lynn. Lynn and Willis's other son, Larry, helped

Willis remove his personal belongings from the Spruce Street house. On October 2, 1985, Willis signed a power of attorney, authorizing his son, Lynn, to act in his behalf and giving control of his property to Lynn. Willis then left Blackfoot to visit relatives in Texas, Oregon, Washington and northern Idaho. Occasionally Willis would call Sarah. But Sarah never asked him to return to the house.

While Lynn and Willis were in Blackfoot they consulted with an attorney. The attorney sent a demand letter to Sarah, asking Sarah to reconvey the Spruce Street property to Willis. Sarah, through counsel, refused. In March, 1986, Lynn, acting as Willis's attorney-in-fact, filed this action to regain the Spruce Street property from Sarah and for damages. On June 14, 1986, Willis died. After his death, Lynn, as personal representative of the estate, was substituted as plaintiff in the action.

## BURDEN OF PROOF

In *Russ Ballard & F.A.I. v. Lava Hot Springs Resort, Inc.,* 97 Idaho 572, 579, 548 P.2d 72, 79 (1976) our Supreme Court stated:

> The law presumes that the holder of title to property is the owner thereof; *Hawe v. Hawe,* 89 Idaho 367, 406 P.2d 106 (1965); *Shurrum v. Watts,* 80 Idaho 44, 324 P.2d 380 (1958). The effect of this presumption is that:
>
> > "[O]ne who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing." [Citations omitted.]

*See also In re Estate of Courtright v. Robertson,* 99 Idaho 575, 580 n. 2, 586 P.2d 265, 270 n. 2 (1978).

Here, at the commencement of this action, the legal title to the Spruce Street property was recorded in the name of Sarah Kohnke. Accordingly, under the above-stated rule, the estate had the burden at trial of establishing by "clear, satisfactory and convincing" evidence that the convey-

ance to Sarah was invalid and that Sarah held the property in trust for the estate. The estate's position is that the gift of the property to Sarah was incomplete and that the purported gift was in violation of the statute of frauds. I.C. § 9–503. Accordingly, we will determine whether the court's findings and the evidence are sufficient to support the court's conclusion that the conveyance to Sarah was invalid and that she held title to the property in trust for the estate.

### STATUTE OF FRAUDS

■ Sarah contends that the district court erred in holding that the gift of the Spruce Street property did not satisfy the requirements of the statute of frauds. Alternatively, she argues that even if the transaction did not satisfy the statute of frauds, as an oral gift it was nevertheless valid because the gift was completed, or because the estate is estopped from reliance upon the statute of frauds defense.

As noted earlier, Willis offered to buy the Spruce Street property for $32,000 by signing a "Real Estate Purchase And Sale Agreement," as the "Buyer," making a $320 "earnest money" payment at that time. When the owners of the property later accepted Willis's offer and signed the agreement as "Seller," Willis became the owner of a beneficial interest in the property. *See Rush v. Anestos*, 104 Idaho 630, 661 P.2d 1229 (1983) (purchaser in an executory installment contract is deemed the equitable owner of the realty). Although Willis later paid the entire balance owing to the sellers, he never was deeded any interest in the property, because he orally requested that the owners' deed name only Sarah Kohnke as the grantee. To comply with the statute of frauds in making the gift, Willis needed to transfer his equitable

interest in the property to Sarah by "a conveyance or other instrument in writing, subscribed by ... [Willis], or by his lawful agent thereunto authorized by writing." I.C. § 9–503.[1] There is no evidence of such a conveyance in the record.

■ The district court found that the realtor acted as Willis's agent when he redrafted the deed to name only Sarah as grantee. However, the court found that the agent had only verbal authorization by Willis, and the court correctly concluded that such authorization was not sufficient. The name of the grantee cannot be inserted by an agent for the grantor (beneficial owner here) unless the agent's authority is in writing. If the authority of the agent is not in writing, his insertion of the grantee's name in the deed does not pass title. *Argyle v. Slemaker*, 99 Idaho 544, 585 P.2d 954 (1978).

■ Willis's actions in approving the new deed prepared by the realtor, approving the closing statement submitted to him, and signing a check for the balance due, suggest that he ratified the agent's acts, and that he, and his estate, ought to be bound by them. The theory of ratification, as it applies to the facts of this case, has not been argued to us. Accordingly, we will only note that the general rule holds:

> where written authorization [by the principal] is required [for the agent to convey the principal's interest in real property], ratification of the unauthorized contract of an agent must be in writing to bind the principal, and if the agent has oral authorization only, ratification must be in writing in such case also, since such authorization, so far as the statute is concerned, is a nullity.

71 AM.JUR.2D, *Statute of Frauds*, § 389 at 914 (1974).[2] *See also* I.C. § 9–505(5)

---

1. Idaho Code § 9–503 states:
   No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creat-

ing, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

2. In her reply brief, Sarah contends that the real estate agent's authority was in writing. However, the earnest money agreement, which Sarah relies upon, sets out only the listing and selling agents. The document does not autho-

(agent's authority to convey real property must be in writing).

## THE SEPARATE DOCUMENTS CONSIDERED TOGETHER

■ Sarah argues, nevertheless, that the statute of frauds is met in this case because the written documents, when considered together and in context with the oral testimony, satisfy the requirement that the conveyance be in writing. This issue presents a mixed question of law and fact. We defer to the trial court's findings of fact unless they are clearly erroneous. However, we freely review the district court's conclusions of law. *See Wolske Bros., Inc. v. Hudspeth Sawmill Co.*, 116 Idaho 714, 779 P.2d 28 (Ct.App.1989). As already stated, for a valid gift of real property there must be a "conveyance or other instrument in writing" subscribed by the party to be charged. I.C. § 9–505. If made by an agent of the party to be charged, such authority must also be in writing. *Id.* Although no particular instrument is necessary to constitute a note or memorandum required by the statute of frauds, the essential terms of an oral gift must be contained in the writing or writings. *See Hoffman v. S V Co., Inc.*, 102 Idaho 187, 628 P.2d 218 (1981).

■ To be enforceable, the note or memorandum must state the gift with such certainty that its essentials can be shown from the writing, or by a reference contained in it to some other writing, without recourse to parol evidence to supply the missing terms. *See Hemingway v. Gruener*, 106 Idaho 422, 679 P.2d 1140 (1984). If the documents consist of unsigned writings, the terms of the agreement will be considered part of the memorandum only where express reference to it is made in the signed writings. *See Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983).

■ Here, Sarah is attempting, through the use of parol evidence, to link separate written documents executed at the time the property was acquired, in the hope that any deficiencies in one document can be overcome by the terms of another document. However, in this case, because the documents are not integrated writings, the argument fails. For example, the earnest money agreement was signed by Willis as a single man and makes no mention of Sarah. The checks used to purchase the real property are signed by Willis and came from his separate checking account. The warranty deed on the real property names Lutz and Whitaker as grantors and Sarah as the sole grantee. Willis's name is not on the deed, which makes no reference to Willis or to the earnest money agreement. The title insurance commitment was issued in Willis's name and did not mention Sarah. The title insurance policy, which was later issued in Sarah's name, makes no mention of Willis.[3]

Without the use of parol evidence, none of the documents, by themselves or together, contain the essential terms of a gift of real property. *Hemingway v. Gruener, supra.* Consequently, we hold that the writings, considered in their entirety, fail to satisfy the statute of frauds.

## COMPLETED GIFT

■ As noted earlier, the district court held that the direct conveyance of title to Sarah from the owners of the Spruce Street property did not convey Willis's "equitable interest" in the property to Sarah.[4]

rize Harris, as the sellers' agent, to change the names on the deed.

3. The realtor testified that Willis also signed "closing papers," sometimes referred to as the "buyer's closing statement." This document—if it existed at the time of trial—was not offered into evidence.

4. The estate has also argued that the gift was not complete because it failed to meet a necessary requirement for all intervivos gifts: The donor must part with all present and future dominion over the gift. *Boston Insurance Co. v. Beckett*, 91 Idaho 220, 419 P.2d 475 (1966). Here, the district court made the following findings of fact concerning the gift of the real property: "Willis desired to live in the house on Spruce Street with Sarah and he wanted to give her the property to accomplish that desire. Willis intended that Sarah have the house and that he and she live in it."

These findings are clearly supported by the evidence and are not erroneous. I.R.C.P. 52(a). However, the findings are not incompatible

Accordingly, the court placed the burden on Sarah to prove by clear and convincing evidence the validity of the oral gift of the real property or other facts supporting an exception to the statute of frauds, notwithstanding the fact that Sarah had legal title to the property and possession. *Russ Ballard & F.A.I. v. Lava Hot Springs Resort, Inc., supra.*

## ESTOPPEL

In Idaho, "[o]ral gifts of land generally fall within the terms of the statute of frauds and are invalid, but the conditions of a particular case can take it out of the operation of the statute, especially when the donee has taken exclusive possession under the gift and has made valuable and permanent improvements to the realty." *Suter v. Suter,* 97 Idaho 461, 465, 546 P.2d 1169, 1173 (1976). The equities in favor of the donee must be such that revoking the gift would be unjust, inequitable, and a fraud on the donee. *See generally* 73 AM.JUR.2D *Statute of Frauds* § 484 (1974).

Sarah has argued that, even assuming the conveyance was not a completed gift, the estate is estopped from using the statute of frauds to defeat her claim because she quit her job, gave up her apartment, moved into the house, and made improvements to the real property, all in reliance on Willis's promise to give her the property. Citing *In re Estate of Courtright v. Robertson, supra,* the district court held that Sarah had the burden of proof to establish the oral gift of the real property, and any facts supporting an exception to the statute of frauds, by clear and convincing evidence.

The district court considered the estoppel issue, made findings in regard to each of the material factual allegations and concluded that while Sarah had paid the taxes and insurance on the property, and had made some improvements such as painting

and carpeting, her expenditures could be adequately compensated for in damages. *See Reinhardt v. Fleming,* 18 Wash.2d 637, 140 P.2d 504 (1943). The court found that none of the improvements were of a permanent nature. *Suter v. Suter, supra.* In addition, it was not shown that the value of the expenditures exceeded the benefit to Sarah of the use of the real property during this time period. *Green v. Brown,* 37 Cal.2d 391, 232 P.2d 487 (1951). Therefore, the district court could not say that revoking the gift would be unjust, inequitable, or fraudulent to the donee. *Davenport v. Board of Education,* 204 Okl. 356, 230 P.2d 271 (1951). The court concluded that Sarah did not sustain her burden of proving that the transfer of the Spruce Street property was outside the operation of the statute of frauds. In summary, the court held that the gift was not complete and the transaction by which Sarah obtained title to the property did not satisfy the statute of frauds. The court determined that Sarah held title in trust for the estate.

The court's factual findings on this issue are supported by substantial competent evidence, and we find no reason to disturb them. I.R.C.P. 52(a). However, ultimately we conclude that even if the judge's conclusions regarding the statute of frauds are correct, the decisive issue is whether under the facts found in this case the court should have applied the constructive trust doctrine.

## THE TRUST THEORIES

The estate attempted to prove that Sarah had wrongfully obtained the Spruce Street property from Willis. However, the district court expressly found that Sarah had not committed "actual fraud, concealment, misrepresentation or taking advantage of another's necessities." The court also found "no undue influence," holding that Willis was fully competent and capable of

---

with the intended gift and, in fact, are quite consistent with it. Where, as here, there has been a valid delivery of the deed conveying title to an intended donee, the donor's intent to jointly occupy the property with the donee is merely one circumstance to be considered in determining whether the donor intended to divest himself of his equitable interest. *See and compare In re Estate of Courtright v. Robertson, supra; Hartley v. Stibor,* 96 Idaho 157, 525 P.2d 352 (1974).

making his own independent decisions regarding the property at the time of the transfer. Ultimately, however, the court decided that because there was no valid written conveyance from Willis to Sarah, she held the legal title to the property in trust for the estate. Because the court and the parties have discussed resulting and constructive trusts, we will address both possibilities.

### Resulting Trusts

■ In *Shurrum v. Watts,* 80 Idaho 44, 324 P.2d 380 (1958), our Supreme Court noted the typical situation where resulting trusts arise:

> Where title to property is taken in the name of one party but the consideration is paid by another, a resulting trust arises in favor of the party who pays the consideration.
>
> Generally an alleged beneficiary of a resulting trust is required to show by clear, cogent, and convincing evidence the underlying facts necessary to give rise to [a] resulting trust.
>
> As a general rule, a resulting trust arises only where such may reasonably be presumed to be the intention of the parties as determined from the facts and circumstances *existing at the time of the transaction.* In *Creasman v. Boyle,* 31 Wash.2d 345, 196 P.2d 835, 840, the rule is stated:
>
> > " * * * the whole doctrine of resulting trusts is founded upon the principle of a presumed intention to create a trust, and where the facts and circumstances are such as reasonably indicate an absence of such intention or indicate a contrary intention the principle should not be applied."

80 Idaho at 53, 324 P.2d at 385–86 (emphasis added) (citations omitted).

The evidence in this case indicates that, at the time of the transaction when legal title was conveyed to Sarah, Willis had the intention to make a gift of the property to her. Although that gift may have been defective because there was no writing to evince it as required by the statute of frauds, the evidence also reasonably demonstrated an absence—on Willis's part—of any intention to create a resulting trust; in fact, the evidence was quite to the contrary. Consequently, upon the facts and circumstances of this case, proper application of the law as set forth in *Shurrum* leads to the conclusion that the principle of a resulting trust should not be applied.

### Constructive Trust

■ In *Hanger v. Hess,* 49 Idaho 325, 328, 288 P. 160, 161 (1930), our Supreme Court stated:

> "Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title.... If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

*See also Davenport v. Burke,* 30 Idaho 599, 608, 167 P. 481, 484 (1917); *Bengoechea v. Bengoechea,* 106 Idaho 188, 192, 677 P.2d 501, 505 (Ct.App.1984).

In the present case the district court recognized the rule that "[t]here must be clear, cogent, convincing evidence to give rise to a resulting or constructive trust." *Mollendorf v. Derry,* 95 Idaho 1, 5, 501 P.2d 199, 203 (1972) (citing *Shurrum v. Watts, supra*). The district court's conclusions of law stated, "[t]he clear, cogent and convincing evidence mandates a finding that Sarah holds the legal title in trust for the beneficial owner, Willis."

In *Mollendorf,* the district court, on facts very similar to the present case, refused to apply a constructive trust, and the Supreme Court upheld this decision. There, a niece of the decedent held an unrecorded—and unrecordable—deed from her deceased

uncle which she had prepared at the uncle's direction. While the court held that the niece occupied a confidential relationship with her uncle, the court refused to find any undue influence even though the uncle was in ill health and comparatively uneducated. It is apparent from the decision in *Mollendorf* that two substantial factors found by the trial court determined that neither a resulting trust nor a constructive trust was applicable. Those factors were that the deceased uncle clearly intended the property to go to his niece, subject only to his life estate, and there was no undue influence or other wrongful conduct by the niece. *Mollendorf* does not support applying the constructive trust doctrine in the present case.

The district court also cited *Witt v. Jones,* 111 Idaho 165, 722 P.2d 474 (1986) and *Klein v. Shaw,* 109 Idaho, 237, 706 P.2d 1348 (Ct.App.1985). In *Witt,* the district court denied relief to the plaintiff seeking imposition of a constructive trust. In affirming the trial court, the Supreme Court stated:

> A constructive trust arises where legal title to property has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable for the holder of legal title to retain beneficial interest in the property. *Davenport v. Burke,* 30 Idaho 599, 167 P. 481 (1917).

111 Idaho at 168, 722 P.2d at 477. The Court held that the plaintiff had failed to plead fraud sufficiently, and then added: "Finally, appellant's complaint fails to allege facts of nonfraudulent *but otherwise wrongful conduct which would support creation of a constructive trust." Id.* at 169, 722 P.2d at 478 (emphasis added). In *Klein v. Shaw, supra,* where a constructive trust was upheld on appeal, the "wrongful conduct" element was present.

However, in the case of *Watts, supra,* the wrongful conduct was missing. The Court held it was essential for the application of the constructive trust doctrine.

While appellant asserts the creation of a constructive trust, nevertheless the evidence fails to show that respondent obtained any of the properties by violation of confidence or fiduciary relationship, *or other unconscionable or fraudulent manner.*

80 Idaho at 53, 324 P.2d at 385 (emphasis added).

From our analysis of the cases cited above, we conclude that the district court erred in imposing a constructive trust under the facts of this case. While the evidence would support a finding that Sarah was in a confidential or fiduciary relationship with Willis, *Claunch v. Whyte,* 73 Idaho 243, 249 P.2d 915 (1952); *Mollendorf v. Derry, supra,* the evidence and the court's findings do not show any violation of that relationship or any other wrongful or unconscionable conduct on Sarah's part which would justify imposing a constructive trust.

## CROSS APPEAL ISSUES

In its cross appeal the estate has argued that the district court erred in its factual findings concerning the rental value of the Spruce Street property and in the value of the improvements made to the premises by Sarah. In light of our conclusion in this case, we need not reach those issues. The estate also contends that the district court erred in allowing into the record certain "hearsay" evidence and other evidence purportedly in violation of the so-called Deadman's Statute. I.C. § 9–202(3); I.R.E. 601(b). *See generally Capps v. Wood,* 110 Idaho 778, 718 P.2d 1216 (1986). We have examined these rulings and find no reversible error.

In conclusion, we uphold the findings of the district court because they are supported by sufficient, competent evidence. However, we determine that upon the facts found, the district court erred in imposing a constructive trust. Accordingly, we must reverse the judgment with directions for the court to enter judgment quieting Sarah Kohnke's title to the Spruce Street property against all claims of the estate.

## ATTORNEY FEES AND COSTS

 The trial court refused to grant the estate's request, under I.C. §§ 12–120(3) and 12–121, for an award of attorney fees incurred by the estate. Sarah contends that if she is successful on appeal she should be awarded attorney fees under I.C. § 12–121, which she has incurred both at trial and on appeal. We disagree. We hold that the record before the trial court would not support a finding that the action was brought or pursued frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1). For the same reason no fees will be awarded on appeal. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979).

Costs to appellant Kohnke. No attorney fees awarded on appeal.

WALTERS, Chief Judge, specially concurring.

I concur with the result set forth in the foregoing opinion. Simply put, the evidence was insufficient to establish the requirements for application of either the doctrine of resulting trust or of a constructive trust. The burden to produce that evidence was on the estate, the challenger to Sarah Kohnke's title to the property. Because the challenge failed, the court erred in imposing the trust theory. Title to the property in question remains undisturbed in Kohnke.

SILAK, Judge, specially concurring.

I concur in the foregoing, except that I do not believe that the opinion should include a discussion of the statute of frauds, completed gift and estoppel arguments made by the parties and ruled upon by the district judge. These theories are unnecessary to our decision. The delivery of a deed naming Sarah Kohnke as the grantee of the real property was a conveyance of legal title to her. I.C. § 55–601; *Crenshaw v. Crenshaw*, 68 Idaho 470, 475, 199 P.2d 264, 266 (1948). The analysis of whether Kohnke should be ordered to reconvey to the Erb estate depends only upon whether the estate has shown by clear, convincing and satisfactory evidence that a resulting or constructive trust should be imposed. I agree fully with the foregoing opinion as to the reversal of the district court's judgment with respect to the imposition of a trust against Kohnke.