910 P.2d 169

**Carl M. DUNHAM, Jr., Plaintiff–Appellant,**

v.

**Roger S. DUNHAM and Belinda F. Dunham, husband and wife, Defendants–Respondents.**

No. 20837.

Court of Appeals of Idaho.

Nov. 29, 1994.

Rehearing Denied Feb. 8, 1995.

David A. Frazier, Coeur d'Alene, argued, for appellant.

Prohaska Law Firm, Coeur d'Alene, for respondents. Thomas F. Prohaska, argued.

WALTERS, Chief Judge.

Carl Dunham appeals from a district court's judgment which held that a fraudulent transfer of real property did not occur between spouses. I.C. §§ 55–913 and 55–914. The court held that on the date the real property was purchased and the quitclaim deed was executed, the spouse executing the quitclaim deed had no interest in the property. Consequently, no "transfer" under the Idaho Uniform Fraudulent Transfer Act took place. For the reasons explained below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Carl Dunham (Carl), of Connecticut, and Roger Dunham (Roger), of Idaho, are brothers who have been involved in litigation between themselves in the State of Connecticut since 1982. Roger and his wife, Belinda Dunham (Belinda), have been married since 1983. It appears that the litigation between these brothers in Connecticut is ongoing and, as of the date of the Idaho district court's memorandum opinion, had not resulted in any final determination. We first explain Carl's actions against Roger, then, the chronology of events between Roger and Belinda upon which Carl bases his claim.

On September 9, 1991, Carl filed a complaint in Idaho in which he alleged that Roger was indebted to him by reason of a judgment entered by a Superior Court of the State of Connecticut on February 26, 1990. He stated that the amount of indebtedness was $59,895.70, and that there had accrued on the principal, interest amounting to $10,585.39 as of the filing date of the complaint. He further claimed that additional interest continues to accrue at the rate of $21.77 per day. Additionally, Carl filed an "Affidavit for Filing of Foreign Judgment" on February 19, 1991, which set forth that he is a "judgment creditor" of Roger's as a result of the February 26, 1990, judgment entered by the Connecticut judge.

In August 1989, Roger received an inheritance of approximately $27,000. Shortly thereafter, he gifted the majority of this money to his wife. In September 1989, Belinda purchased a piece of real property solely in her name for approximately $95,000. She used $25,071.31 of the gifted inheritance money for the down payment, and entered into a promissory note with Mountain West Savings Bank which was secured by a deed of trust, for the remaining balance. Belinda alone signed both the promissory note and the deed of trust on September 6, and made the down payment on September 11. The property's title was transferred by the seller to Belinda through a warranty deed dated September 11, 1989. On the same date, Roger executed a quitclaim deed to her on the property. Belinda gave no consideration in return for either the quitclaim deed or the gifted inheritance money.

At the time of Belinda's property purchase, Carl contends that Roger owned real property in Connecticut worth approximately $500,000. However, outstanding claims against it allegedly totalled over $850,000.

Carl states that these claims include claims from Roger's own attorneys, Carl himself, the property's mortgage, and an outstanding judgment lien. He further contends that Roger owned personal property in 1989 but that the value was never determined. All of this property was either disposed of or titled in Belinda's name.

On September 9, 1991, Carl filed a complaint against Roger and Belinda alleging that Roger made the transfer of real property to Belinda through the quitclaim deed with the actual intent to hinder, delay, and defraud him as a creditor; and that Roger did not receive a reasonably equivalent value in exchange for the transfer at a time when he believed or should have believed that he was indebted beyond his ability to pay that indebtedness. Carl requested that the court declare the transfer fraudulent and, thus, void so Roger's interest in the property would be subject to Carl's foreign judgment lien.

The trial court held that a fraudulent transfer of real property did not occur between Roger and Belinda. The court found that Roger did not have an interest in the asset being transferred and, therefore, could not have transferred an interest in the property by way of the quitclaim deed. Carl then brought this appeal.

## ANALYSIS

In his appellate argument, Carl contends that the issue before this Court is whether the trial court erred in failing to set aside the transfer of real property from Roger to Belinda by way of the quitclaim deed. In the trial proceedings, Carl did not seek review of the gift of money from Roger to Belinda or whether Roger possessed a community property interest either in the loan proceeds reflected by the promissory note or in the real property when it was purchased by Belinda. Accordingly, we will not address those possibilities on this appeal. *Matter of Estate of Reinwald,* 122 Idaho 401, 834 P.2d 1317 (1992); *Whitehawk v. State,* 119 Idaho 168, 170, 804 P.2d 341, 343 (Ct.App.1991).

Carl contends that the trial court's decision should be set aside because: (1) a debtor's

transfer of an asset for no consideration is presumed fraudulent when he reasonably should have believed he would incur debts beyond his ability to pay them when they became due, I.C. § 55–913(1)(b)2; (2) a debtor's transfer of an asset to an insider for an antecedent debt when the debtor was insolvent is presumed fraudulent, I.C. § 55–914(2); and (3) a person becomes the owner of an equitable interest in the property when part or all of the property's purchase price is paid by this individual, *Erb v. Kohnke,* 121 Idaho 328, 824 P.2d 903 (Ct.App.1992).

Roger counters stating that the analytical framework for evaluating the district court's ruling is the Idaho Uniform Fraudulent Transfer Act set out at I.C. §§ 55–901 through 55–921. He also claims that Carl mistakenly relies upon *Erb* for the proposition that an equitable interest in the property exists. Roger alleges that the court's reference to this idea in *Erb* was merely dictum and not central to the disposition of the case.

■ We agree with the trial court that the statutory analysis for the issue raised before this Court is set forth in the Idaho Uniform Fraudulent Transfer Act. I.C. §§ 55–913 and 55–914 address the ability of present and future creditors to have a transfer deemed fraudulent. Both statutes apply to a creditor whose "claim arose before the transfer was made." I.C. §§ 55–913(1) and 55–914(1). Therefore, we must first determine whether a claim existed at the time of the transfer.

A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." I.C. § 55–910(3). The trial court found that Carl had a claim which arose out of contempt of a court-ordered injunction against Roger regarding property in Connecticut. Carl filed a motion for contempt on August 18, 1989; the quitclaim deed was executed by Roger on September 11, 1989; and a Superior Court of the State of Connecticut issued an order on February 25, 1990, requiring Roger to pay Carl in accordance with the motion for contempt. Given the foregoing facts, we agree with the trial court that Carl was a creditor whose

claim, even though not yet reduced to a judgment, arose before the quitclaim deed was executed.

Next, we must determine when a "transfer" occurs. A transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." I.C. § 55–910(12). A transfer of real property, including the interest of the seller, is made "when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." I.C. § 55–915(1)(a). However, a transfer is not made until the debtor has acquired rights in the asset transferred. I.C. § 55–915(4).

Given the above-described definition of a transfer, this case turns on whether or not Roger had an asset or an interest in an asset to transfer. In other words, did Roger have an interest in the real property purchased by Belinda on the date he executed the quitclaim deed? A quitclaim deed is a deed of conveyance operating by way of release. BLACK's LAW DICTIONARY 1251 (6th ed. 1990). It is intended to pass any title, interest, or claim which the grantor may have in the premises. *Id.* In essence, it is a mode of disposing of an asset or an interest in an asset. An "asset" is "property of a debtor." I.C. § 55–910(2). The term, however, does not include property "to the extent it is encumbered by a valid lien" or property "to the extent that it is generally exempt under non-bankruptcy law." *Id.* Property, in turn, is defined as "anything that may be the subject of ownership." I.C. § 55–910(10).

The evidence presented at trial indicates that Roger gifted most, if not all, of his inherited money to Belinda in August of 1989. As noted above, the appellant did not challenge this gift or transfer. On September 11, 1989, Belinda used a portion of the gifted money, which at this time was considered her separate, personal property, as the down payment on the real property. The warranty deed, dated September 11, 1989, lists the grantee solely as Belinda, and she alone signed both the promissory note and deed of trust on September 6, 1989. When Roger executed the quitclaim deed to Belinda on September 11, 1989, he had no interest in the real property to convey. Therefore, without an asset or an interest in an asset, a transfer could not have occurred as a matter of law.

## ATTORNEY FEES

Roger and Belinda seek attorney fees on appeal pursuant to I.C. § 12–121. This section, as limited by I.R.C.P. 54(e)(1), allows for an award of attorney fees when an action has been "brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). This section and rule are a proper basis for awarding fees on appeal. *Troche v. Gier,* 118 Idaho 740, 742, 800 P.2d 136, 138 (Ct.App.1990). However, we conclude that the appeal in this case was not brought unreasonably and without foundation.

## CONCLUSION

The district court correctly found that Roger was not an owner of an interest in the real property purchased by Belinda. Without an interest in the property, no transfer could have taken place when the quitclaim deed was executed.

Accordingly, the judgment entered below is affirmed. Costs, but not attorney fees, on appeal are awarded to the respondents.

PERRY, J., concurs.

LANSING, Judge, dissenting.

I dissent from the majority's conclusion that only a gift of money, not a transfer of an interest in real property occurred, and that Carl Dunham's claim must therefore fail because his complaint challenged only a conveyance of real property from Roger Dunham to Belinda Dunham.

The district court and the majority of this Court make what is, in my view, an artificial distinction between the alleged monetary gift

from Roger to Belinda and the purchase of real property in Belinda's name alone. Their analysis depends upon an assumption that there was first a completed gift of money and then a later, independent real estate purchase by Belinda. The trial evidence showed, however, that there was an integral relationship between the transfer of money and the use of that money as the down payment on the land to which Belinda took title.

A valid gift is not made until the property has been delivered to the donee and the donor has relinquished all dominion over the gifted asset. *Matter of Estate of Lewis,* 97 Idaho 299, 302, 543 P.2d 852, 855 (1975); *Boston Insurance Co. v. Beckett,* 91 Idaho 220, 222, 419 P.2d 475, 477 (1966). Therefore, there was no accomplished gift of money from Roger to Belinda unless and until Roger delivered the funds to Belinda. The evidence as to when and how Roger transferred the inherited funds to Belinda or for her benefit is not well-developed. However, the financial statement dated September 14, 1989, that Belinda submitted in support of her application for a mortgage loan to purchase the property, indicates that as of that date the inherited money was still held in a trust account of the decedent's estate in a bank in Connecticut. At trial, Roger testified as follows:

Q. To the best of your knowledge who requested the quitclaim deed be prepared?

A. I believe it was the bank or the title, I think it was the bank, the lending institution is the one who wanted it.

Q. Do you have any opinion as to why they would want that?

A. I think it was because the check was from the Connecticut bank from the trust of my aunt and it was made out to me. And I think they were concerned that they were lending money to my wife, and if the check was signed by me that I have no interest in it since they were lending the money to my wife.

This testimony suggests that Roger did not gift the money to Belinda before the real estate purchase but that the money was delivered at the closing of the real estate transaction in the form of a check from his aunt's estate to Roger which was then conveyed to the closing agent. This is the *only* testimony that bears upon the transfer of the funds from Roger. There is no testimony that the money was delivered to Belinda at any time prior to or separate from the consummation of the real estate transaction in mid-September 1989 and, thus, no showing of an independent gift of the money.

In sum, the uncontradicted evidence showed that money belonging to Roger, promptly upon leaving Roger's control, was used as the down payment in the real property purchase, that title to the property thus acquired was taken in Belinda's name, and that Roger simultaneously transferred to Belinda by quitclaim deed any interest that he held in the real property.

Regardless of the precise date when the funds were transferred or to whom, the substance of the transaction is that Roger's money was used to purchase real property and that Roger relinquished to Belinda any interest in the real property, to the detriment of Roger's creditors. This was in substance a conveyance of a real property interest made without a reasonably equivalent value in exchange, which falls within the purview of I.C. §§ 55–913(1)(b) and 55–914.

The defendants' characterization of this interchange as a gift of money rather than a gift of real property is just that—a convenient *post hoc* characterization. The Court should look beyond either party's interpretation to the substance of the transaction. *See, e.g., Pennington v. Bigham,* 512 So.2d 1344, 1347 (Ala.1987) ("[T]he form of the transaction by which property, liable to the satisfaction of the demands of creditors, is fraudulently sought to be placed beyond their reach is not material. This Court looks beyond mere form to the substance of the transaction."); *Tacoma Association of Credit Men v. Lester,* 72 Wash.2d 453, 433 P.2d 901, 903 (1967) (in a fraudulent conveyance action, "courts will invariably look to the substance of a transaction rather than its form.").

Very similar circumstances were presented in *D.H.R. Construction Co., Inc. v. Donnelly,*

**60**

180 Conn. 430, 429 A.2d 908 (1980), where a debtor had made a gift to his wife of $3,000 which he had recently borrowed. It was asserted by a creditor that the debtor made this gift for the purpose of buying residential property, that title to the property was put in the wife's name alone, and that the debtor thereafter made monthly payments on the mortgage. The creditor brought a fraudulent conveyance action alleging that the debtor had caused the real property to be conveyed to his wife without consideration. The trial court granted summary judgment to the defendant debtor, reasoning, as did the district court here, that the debtor "did not own the property and did not transfer it to [his wife]." The Connecticut Supreme Court reversed the summary judgment, stating:

> We conclude that there is no inherent difference between the act of a debtor conveying his property to another without consideration and that of a debtor causing the title to the property purchased to be placed in the name of another, where the object of such transfer is to hinder, delay or defraud creditors.

*Id.*, 429 A.2d at 910. The Connecticut Supreme Court's approach is reasonable and fair and should be followed here.

It certainly would have been better practice for Carl's complaint to have alleged both the asserted gift of money and the conveyance of real property as fraudulent transfers, and a more complete record as to exactly how the transaction occurred could have been made at trial. Nonetheless, the substance of what was proved—an acquisition in Belinda's name of real property purchased with Roger's assets—was, in its essence, a relinquishment to Belinda of an interest in real property that Roger otherwise would have held as a consequence of his contribution of the down payment. Accordingly, I cannot agree with my colleagues' conclusion that Carl's claim is defeated because his complaint alleged a fraudulent transfer of an interest in real property rather than a fraudulent gift of money.